# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

REBECCA MASSEY,

            Plaintiff,

v.                                  CIVIL ACTION NO. 2:17-cv-01922

21st CENTURY CENTENNIAL INSURANCE COMPANY,

            Defendant.

## MEMORANDUM OPINION AND ORDER

Pending is Plaintiff Rebecca Massey's Motion to Remand. (ECF No. 4.) For the reasons that follow, the motion is **DENIED**.

## I. BACKGROUND

This case arises from an automobile collision near Racine, West Virginia on July 16, 2014. According to the Complaint filed in the Circuit Court of Boone County, West Virginia on May 21, 2015, Plaintiff Rebecca Massey was driving her vehicle in an easterly direction when a westbound vehicle operated by Christopher Tully[1] crossed left of center and struck Plaintiff's vehicle. The original Defendants to the Complaint were Tully and 21st Century Centennial Insurance Company, Plaintiff's insurer.[2]

---

[1] Tully's surname is intermittently spelled "Tulley" throughout the state court record, including on the Civil Case Information Statement prepared by the Circuit Court of Boone County. (Not. of Removal Ex. A. at 1.) The Court adopts the spelling employed by the Complaint (Tully).

[2] Plaintiff sued Tully for negligence. The claims against 21st Century include breach of contract, bad faith, and unfair claims settlement practices. Plaintiff also seeks a declaration regarding the availability of underinsured motorist coverage under the insurance policy issued by 21st Century.

On March 16, 2017, the West Virginia state court entered a partial dismissal order dismissing Tully as a Defendant due to settlement. The dismissal eliminated the only in-state defendant from the suit and created complete diversity of citizenship among the parties. On that basis, the remaining Defendant 21st Century removed the case to this Court on March 17, 2017. Plaintiff moved to remand on April 14, 2017, citing the one-year time limitation on removal of suits from state to federal court based on diversity of citizenship. 28 U.S.C. § 1446(c). The motion has been fully briefed and is ready for disposition.

## II. LEGAL STANDARD

United States district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). The right to remove a case from state to federal court derives from 28 U.S.C. § 1441, which states that "any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." A party removing a case bears the burden to demonstrate that federal jurisdiction exists at the time of removal, and remand is required when jurisdiction is in doubt. *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) (citation omitted); *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993) (noting "Congress' clear intention to restrict removal and to resolve all doubts about the propriety of removal in favor of retained state court jurisdiction") (citation omitted).

Section 1446(b)(3) governs when a case that was not initially removable based on the pleadings later becomes so. Section 1446(b) provides, "a notice of removal may be filed within

30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." When removal under § 1446(b)(3) is based on diversity jurisdiction, § 1446(c) adds a limitation. In that scenario, removal is not permitted "more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." § 1446(c).

### III. DISCUSSION

Defendant 21st Century removed the instant action to federal court within 30 days of receiving an Agreed Order of Partial Dismissal executed by Plaintiff's counsel and dismissing Plaintiff's claims against Christopher Tully, the non-diverse Defendant. Because 21st Century removed this proceeding more than one year after Plaintiff brought suit, the issue before the Court is whether Plaintiff acted in bad faith to prevent the case from becoming removable earlier.[3] Defendant 21st Century argues that Plaintiff named Tully as a Defendant to the suit for the purpose of destroying diversity but never pursued her case against him. As further evidence of bad faith, 21st Century alleges that Plaintiff received a settlement offer from Tully's insurer prior to initiating this civil action but refused to act on the offer until long after the one-year deadline had passed.

The Fourth Circuit has not defined the contours of bad faith for purposes of § 1446(c). Within this district, however, the case law provides some clarity. This Court has held that

---

[3] The timing of removal aside, Plaintiff does not dispute the existence of federal diversity jurisdiction. The parties became completely diverse upon Tully's dismissal because Plaintiff is a West Virginia citizen and 21st Century is not considered a citizen of that State. (Not. of Removal 4–5.) Further, between Plaintiff's claim to underinsured motorist coverage in the amount of "$50,000/$100,000" under the insurance policy, her request for attorney's fees, and her demand for punitive damages, the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). Plaintiff also does not dispute 21st Century's contention that the Agreed Order of Partial Dismissal qualifies as "other paper" making the case removable.

3

"strategic avoidance" of federal jurisdiction is not bad faith, rather, "[t]o prove bad faith, a defendant must show 'forum manipulation.'" *Hackney v. Golden Girl*, No. 3:16-cv-06569, 2016 WL 6634898, at *2 (S.D. W. Va. Nov. 8, 2016) (Chambers, J.) (quoting *Johnson v. HCR Manorcare LLC*, No. 1:15-cv-189, 2015 WL 6511301, at *4 (N.D. W. Va. Oct. 28, 2015)); *accord Ramirez v. Johnson & Johnson*, No. 2:15-cv-09131, 2015 WL 4665809, at *3 (S.D. W. Va. Aug. 6, 2015) (Goodwin, J.) (citations omitted).

Determining whether the plaintiff manipulated the forum has been described as a two-step process, one this Court has adopted previously.[4] *Ramirez*, 2015 WL 4665809, at *4 (citing *Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225, 1277 (D.N.M. 2014)). The first step and central inquiry is "whether the plaintiff actively litigated against the removal spoiler." *Aguayo*, 59 F. Supp. 3d at 1264. "A finding that the plaintiff did not actively litigate against the removal spoiler constitutes bad faith, and the Court will retain jurisdiction over the case." *Id.* at 1228. On the other hand, active litigation against the non-diverse defendant creates a presumption of good faith. *Id.* at 1229. The presumption may be rebutted at step two by a showing that "the plaintiff kept the removal spoiler in the case to defeat removal." *Id.*; *see also Ramirez*, 2015 WL 4665809, at *7 (requiring a defendant relying on the bad faith exception "'to show either that the plaintiff did not litigate at all, or engaged in a mere scintilla of litigation against the removal spoiler; or (ii) that the defendant has strong, unambiguous evidence of the plaintiff's subjective intent, for which the plaintiff cannot offer any plausible alternative explanation.'" (quoting *Aguayo*, 59 F. Supp. 3d at

---

[4] Though the standard for evaluating bad faith under § 1446(c) varies somewhat from case to case, the parties rely on the standard set forth in *Aguayo* and endorsed in *Ramirez* in briefing the Motion to Remand. Finding *Aguayo*'s two-step standard offers a practical approach to the issue, the Court will do the same.

1277)).  Plainly, the presence or absence of bad faith will depend on the unique circumstances of each case.

The Court will clarify one point before proceeding further.  Plaintiff argues that she is entitled to a presumption of good faith because Tully was liable for the damages incurred in the vehicle accident.  In doing so, Plaintiff confuses the bad faith standard with the standard for proving fraudulent joinder.  Fraudulent joinder is demonstrated by proof that "there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court."  *Harltey v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) (citation and internal quotation marks omitted).  A plaintiff may pursue a valid claim in bad faith.  Further, § 1446(c) focuses not on the validity of the plaintiff's claim against a non-diverse party at the time the action was filed, but whether "the plaintiff has acted in bad faith in order to prevent a defendant from removing the action."  The Court proceeds to consider whether Plaintiff kept Tully in the state court case for the sole purpose of defeating removal.

### i. *Active Litigation against the Non-Diverse Defendant*

Active litigation is defined broadly.  "Any non-token amount of discovery or other active litigation against a removal spoiler entitles the plaintiff to the presumption [of good faith]." *Aguayo*, 59 F. Supp. 3d at 1275.  In evaluating whether discovery or litigation is non-token, courts look to "(i) the amount of time the spoiler spent joined to the case, [and] (ii) the size and money value of the case."  *Id.*  Active litigation can be determined by whether a plaintiff "keeps the removal spoiler joined to obtain discovery from him or her, to force a settlement, to pressure the removal spoiler to testify on the plaintiff's behalf against other defendants, or to obtain a judgment against the removal spoiler that the plaintiff knows the removal spoiler cannot pay[.]"  *Id.* at 1228.

5

*Aguayo* provides an example of conduct considered to clear the active litigation bar. There, the defendant argued that the plaintiff's dismissal of a non-diverse defendant six days prior to trial in state court was indicative of bad faith. The *Aguayo* court disagreed. Noting that whether a plaintiff takes discovery from the non-diverse defendant will "[m]ost often" be the dispositive factor in assessing active litigation, *Aguayo* reasoned that the plaintiffs were entitled to a presumption of good faith by deposing the non-diverse defendant before dismissing the case against him. *Id.* at 1275, 1282. The court added, "a good faith plaintiff need not seek a judgment at all—discovery is a perfectly legitimate end for naming a defendant, provided the claims asserted are not frivolous." *Id.* at 1282–83.

In contrast, a Texas court found bad faith justified an otherwise untimely removal where the plaintiff waited seven months following the filing of the case to serve the non-diverse defendant, failed to serve him with discovery requests, never took or requested his deposition, and dismissed the claim against him three months after the expiration of the one-year removal deadline. *Lawson v. Parker Hannifin Corp.*, No. 4:13-cv-923-O, 2014 WL 1158880 (E.D. Tex. Mar. 20, 2014); *but see Heacock v. Rolling Frito-Lay Sales,* LP, 2016 WL 4009849, at *4 (W.D. Wa. July 27, 2016) (plaintiff deposing and serving two discovery requests on non-diverse party, even if considered the "bare minimum effort," met the standard to qualify as active litigation); *Ramirez*, 2015 WL 4665809, at *4 (construing evidence that plaintiff sought discovery from the non-diverse defendant as proof that she did not manipulate the forum); *Bajaba, LLC v. Gen. Steel Domestic Sales, LLC*, No. 14-cv-4057, 2014 WL 5363905, at *3 (W.D. Ark. Oct. 21, 2014) (no bad faith in failing to serve non-diverse defendants and unsuiting them two years later; non-diverse defendants were included in the complaint from its inception, remained in the case well after the one-year

6

removal deadline had passed, and district court found evidence that plaintiff intended to prosecute claims against non-diverse defendants upon remand).

Plaintiff's efforts to prosecute her claim against Tully were meager at best and do not qualify as active litigation. Of first concern is the fact that Plaintiff never effected service of process on Tully after nearly two years of litigation. Plaintiff made efforts to serve process on Tully soon after filing her Complaint on May 21, 2015. A private investigator retained for the purpose attempted to serve Tully with a copy of the Summons and Complaint once on May 21, 2015 and twice May 24, 2015 at the address listed in the vehicle accident report. These efforts were unsuccessful. (Chaffin Aff. ¶ 3, Pl. Mot. to Remand Ex. 1.) Plaintiff then obtained an updated address from Tully's insurer and attempted to serve "Christopher Tulley" by certified mail in September and October 2015. (Pl. Mot. to Remand Ex. 2.) On both occasions, the certified mail came back unaccepted.

Despite the lack of service, Tully's insurer retained counsel on his behalf. Tully's counsel, Brian D. Morrison, notified Plaintiff's attorney of the same by letter dated August 24, 2015. (*Id.* Ex. 3.) Mr. Morrison advised: "In the event that you have not yet perfected service of the Summons and Complaint, I will try to contact my client and see if he will permit me to accept service of the Summons and Complaint on his behalf and advise you of such when I have heard something further." (*Id.*) Mr. Morrison inquired further by email sent December 15, 2015, stating "I realize that you have not yet perfected service upon my client, Tully. Naturally, the time to do so has passed, and I am wondering if you are simply moving forward with the [underinsured motorist] claim and are ready to resolve the claims against my client." (*Id.* Ex. 4 at 1.) In a responsive communication sent the same day, Plaintiff's counsel advised Mr. Morrison

7

that attempts to serve Tully by certified mail had been ineffective. "I am at the point to publish," Plaintiff's counsel wrote. (*Id.*)

Plaintiff's counsel never attempted to serve Tully by publication, however, nor did he pursue service on Tully through Tully's attorney. Further, Plaintiff never moved the state court for an extension of the deadline for service of process. On April 20, 2016, Tully's counsel filed a Motion to Dismiss on Tully's behalf, citing Plaintiff's failure, "for more than eleven (11) months, to serve [the Complaint] upon the defendant." (Not. of Removal Ex. A. at 57.) Mr. Morrison wrote that he was unaware of "any activity" on the part of Plaintiff to have Tully served. (*Id.* at 59.) Plaintiff never filed a response. While the parties appeared for a hearing on June 16, 2016, the state court did not hear the motion on that day and had not issued a ruling by the time Tully was dismissed from the case over nine months later.

Plaintiff's failure to serve the non-diverse Defendant does not bode well for her. Presumably, serving process on the removal spoiler is the bare minimum a plaintiff can do to support a claim of good faith litigation against the non-diverse defendant. *See, e.g.*, *Lawson*, 2014 WL 1158880, at *5–6 (finding bad faith in part due to seven-month delay in serving the non-diverse defendant). Plaintiff's argument that it would have been an "exercise in futility" to continue to pursue service of process on Tully rings hollow. (Pl.'s Reply to Mot. to Remand at 2). A defendant purposefully evading service of process may be served by means such as publication, W. Va. R. Civ. P. 4(e), but Plaintiff did not pursue this or any other alternative, including service through Tully's counsel. Even after Tully filed his Motion to Dismiss, Plaintiff never sought an extension of the deadline to serve process. When evaluating whether Plaintiff acted in bad faith, this is certainly a significant factor.

8

Lack of service aside, Plaintiff failed to litigate her claim against Tully. During the course of almost two years of litigation, Plaintiff never served a single discovery request on Tully. She never noticed Tully's deposition nor engaged in any other form of discovery against the non-diverse defendant. Meanwhile, Plaintiff actively pursued her claims against Defendant, serving requests for admission, interrogatories, and requests for production of documents on October 16, 2015 and May 12, 2016. (Not. of Removal Ex. B.) These facts make *Ramirez* and *Aguayo* readily distinguishable. *Ramirez*, 2015 WL 4665809, at *4, ("[A]lthough Ms. Ramirez did not exhaust all avenues of discovery at her disposal, she did seek and obtain discovery from [the non-diverse defendant] Dr. Reyes, including requests for admissions and requests for disclosure. . . . Finally, Ms. Ramirez's counsel even deposed Dr. Reyes."); *Aguayo*, 59 F.Supp.3d at 1275 (evidence that plaintiffs deposed the non-diverse defendant sufficient to establish good faith).

In *Aguayo*, a murder victim's family and personal representative brought suit against the murderer (a non-diverse defendant) and an out-of-state insurer.[5] As stated previously, the plaintiffs dismissed the victim's murderer as a defendant days before trial was scheduled to begin. The insurer removed the action to federal court citing bad faith under § 1446(c). In making the decision to remand, *Aguayo* constructed a hypothetical scenario that would have produced the opposite outcome:

> Assume that, on the advice of their attorney, the Plaintiffs sought no discovery from [the non-diverse defendant], knowing [the non-diverse defendant] is judgment-proof and any funds spent on discovery would be wasted, and also knowing that [the non-diverse defendant]'s murder conviction would provide all the evidence the Plaintiffs needed to prosecute their claims against him.

---

[5] The case also involved claims against the New Mexico Department of Public Safety and the State of New Mexico. While the insurers also argued that the plaintiffs acted in bad faith by joining these defendants, the court found that the plaintiffs' good faith was "even clearer" regarding the State defendants. 59 F. Supp. 3d at 1283. With regard to joining the victim's murderer, good faith was a closer question.

*Id.* at 1285–86. "Such actions," the court reasoned, "would be considered bad faith." *Id.* at 1286. *Aguayo*'s hypothetical imagines facts closely akin to those presented here. Plaintiff sued Tully, the man responsible for destroying her vehicle and causing her injuries, along with an insurer from whom she stood to gain a sizeable monetary award. After a few unsuccessful attempts at serving Tully, however, Plaintiff appears to have lost interest in her negligence claim. Plaintiff vigorously pursued her claims against 21st Century but did not engage in even a "mere scintilla of litigation" against Tully after nearly two years of litigation. *Id.* at 1277.

Plaintiff opposes this conclusion. She describes actions taken by Tully's counsel for proof that she actively litigated her claim. Plaintiff points out that Mr. Morrison provided a letter notifying Plaintiff of his role in representing Tully, corresponded via email with other counsel of record, and filed Motions to Dismiss and to Bifurcate on behalf of his client. But these actions were taken by Tully's counsel, not by Plaintiff, and the Court cannot find that Plaintiff's reaction to Mr. Morrison's initiative—namely, responding to Mr. Morrison's emails and appearing for a hearing he noticed—constitute active litigation on her part. Plaintiff also asserts that she engaged in "informal discovery" with Tully, citing an email her counsel sent to Tully's counsel asking for a valuation of Plaintiff's truck. It is clear from the email that Plaintiff sought the valuation for the purpose of pursuing her underinsured motorist claim against 21st Century, not any claim against Tully.[6] (Def.'s Resp. to Mot. to Remand Ex. A at 1.)

Finally, Plaintiff contends that her counsel's successful efforts in securing a settlement from Tully's insurer qualify as a "non-token" amount of litigation. However, the course of that

---

[6] In the subject email Plaintiff's counsel wrote: "21st Century has advised it may afford coverage on the UIM property damage claim. Therefore, can you send me a copy of the valuation which Peak Property & Casualty prepared in this case (the documents indicating the value of the truck)." (Def.'s Resp. to Mot. to Remand Ex. A at 1.)

10

negotiation is not helpful to Plaintiff. By letter of March 30, 2015, Tully's insurance carrier extended an offer to pay the $20,000 per person bodily injury limit under Tully's policy. (Pl. Mot. to Remand Ex. D at 2.) Plaintiff refused to accept the offer at that time, choosing instead to file suit against Tully on May 21, 2015. Plaintiff elected to accept the long-outstanding offer in late 2016. Her counsel recommended revisions to the Release of Claims and Settlement Agreement in December 2016. On March 7, 2017, the parties executed an Agreed Order of Partial Dismissal dismissing Plaintiff's claims against Tully. Plaintiff released her claim against Tully in exchange for $20,000—precisely the same amount originally offered by Tully's insurer.

Plaintiff does not explain why it suddenly became expedient to accept the offer by Tully's insurer in late 2016.[7] In any event, the Court cannot find that Plaintiff participated in a "non-token" amount of litigation by accepting a settlement offer from Tully's insurer. *Aguayo* opined that keeping the non-diverse defendant in a case for the purpose of "forc[ing] a settlement" would constitute proof of active litigation. 59 F. Supp. 3d at 1229. Plaintiff did not force a settlement offer from Tully's insurer. To the contrary, Plaintiff has presented no evidence that she engaged in negotiation of any kind to reach that agreement. Plaintiff simply allowed the offer to remain open and accepted the settlement when it became convenient to do so. From the record before the Court, Plaintiff's negotiation efforts in connection with the settlement were limited to her counsel's participation in revising the Release of Claims. Given the two-year span of this litigation in state court, these efforts are token.

---

[7] As explained below, email correspondence by her counsel strongly suggests the passage of the removal deadline made the difference.

The Court finds that Plaintiff did not actively litigate her case against Tully. Her failure to do so constitutes bad faith. *Aguayo*, 59 F. Supp. 3d at 1228; *Ramirez*, 2015 WL 4665809, at *4.

   ii.   *Direct Evidence of Bad Faith*

Having found that Plaintiff did not actively litigate her case against Tully in state court, moving to the second step of the *Aguayo*/*Ramirez* analysis is unnecessary. Efforts to ascertain a plaintiff's subjective intent are unlikely to yield fruit because a "plaintiff can virtually always articulate some basis other than forum manipulation for keeping the removal spoiler in the case." *Aguayo*, 59 F. Supp. 3d at 1264. Still, 21st Century opposes the Motion to Remand with objective evidence—obtained during the pendency of the state court litigation—that Plaintiff retained Tully in the state court action for the sole purpose of avoiding removal. This evidence bolsters the Court's finding of bad faith.

The Court previously described the settlement offer extended by Tully's insurance carrier on March 30, 2015, prior to Plaintiff filing suit. While Plaintiff refused to accept the offer at that time, communications from Plaintiff's attorney reveal that he kept the offer outstanding to prevent removal. On December 23, 2015, Tully's counsel emailed Plaintiff's attorney with this question: "Did you have a chance to speak with 21st Century regarding the [underinsured motorist] claim, whether they would be inclined to remove the case to federal court? Obviously, I am asking to see if you are yet in a position to try to resolve this matter." (Def.'s Response to Mot. to Remand Ex. A at 2.) When Plaintiff's counsel did not respond, Tully's attorney renewed the inquiry on January 18, 2016. (*Id.*) On February 10, 2016, Plaintiff's counsel responded, "I am awaiting [21st Century]'s response concerning the removal issue. I will keep you posted." (*Id.* at 4.)

12

Shortly after the one-year mark had passed, Plaintiff's counsel sought confirmation from 21st Century that the case would not be removed if Plaintiff accepted the offer of liability limits. On June 16, 2016, the date scheduled for hearing on Tully's Motion to Dismiss, Plaintiff's counsel sent 21st Century's attorney an email stating, "I have a hearing today with Brian Morrison in the above matter (he represents the tortfeasor, Chris Tulley). Is 21st Century going to attempt to remove this case if I accept the $20,000 liability limits (I note the case has been pending for more than 1 year now)?" (Not. of Removal Ex. E.) Counsel for 21st Century refused to confirm whether 21st Century would seek removal following Tully's dismissal.[8]

Plaintiff eventually agreed to accept the insurance policy limits in late 2016, though readying the documents necessary for Tully's dismissal took several more months. On November 3, 2016, Tully's counsel forwarded to Plaintiff's counsel a check for $20,000 along with an Agreed Order of Partial Dismissal and a Release and Settlement Agreement. (Not. of Removal Ex. F.) Tully's attorney contacted Plaintiff's counsel on December 6, 2016, noting, "I sent those to you over a month ago, and still have not received either back from you." (Not. of Removal Ex. G.) Plaintiff's counsel responded with a suggested revision to the Release and Settlement Agreement and the parties finalized the changes that month. Another three months passed before Plaintiff signed the Agreed Order of Partial Dismissal on March 7, 2017. (*Id.* Ex. 3.) Plaintiff does not attempt to explain away this delay and the Court does not wish to place undue emphasis upon it.

---

[8] In these facts the Court finds good reason to distinguish *Bajaba*, a case cited by Plaintiff. In *Bajaba*, the district court found that the non-diverse defendants' dismissal two years after the initiation of state court litigation, rather than immediately after the removal deadline, weighed against a finding of bad faith. 2014 WL 5363905, at *3. Here, the timing of counsel's email to 21st Century is suspicious. Drafted less than a month after the removal deadline, the inquiry by Plaintiff's counsel indicates that counsel was keenly aware of the deadline and creates a strong inference that acceptance of the settlement offer had been postponed until the deadline passed. *Bajaba* presented no such evidence.

Still, because Plaintiff appears to be responsible for the delay, the Court cannot credit Plaintiff with good faith just because Tully was dismissed ten months following the removal deadline as opposed to immediately afterward.

The applicable legal standard asks whether the plaintiff can "offer any plausible alternative explanation" in response to strong evidence of an intent to manipulate the forum. *Ramirez*, 2015 WL 4665809, at *4 (citing *Aguayo*, 59 F. Supp. 3d at 1277). While acknowledging that she waited to accept the $20,000 liability limits offer from Tully's insurance carrier, Plaintiff claims that she filed suit "so she could determine whether defendant Tully had any additional or other available insurance coverage, personal assets to satisfy an excess judgment, etc." (Pl.'s Reply at 2.) Plaintiff's explanation for her failure to accept the offer strikes the Court as implausible since Plaintiff abandoned her attempt to serve Tully and certainly never served discovery aimed at identifying his assets or the extent of his insurance coverage. *See United States v. Burgos*, 94 F.3d 849, 867–68 (4th Cir. 1996) (implausible statements can be viewed as evidence of guilt).

"[I]t is not inherently bad faith to use strategy to defeat federal jurisdiction," *Ramirez*, 2015 WL 4665809, at *3 (citation and internal quotation marks omitted), yet counsel's inquiry regarding removal creates a strong inference that the settlement offer was allowed to remain outstanding for one purpose—to prevent removal to federal court. When viewed in tandem with the lack of litigation against the non-diverse defendant, the Court takes counsel's inquiry as proof that Tully "would not have been in the case at the one-year mark but for [Plaintiff's] deliberate forum manipulation." *Aguayo*, 59 F. Supp. 3d at 1263.

The Court finds that in failing to litigate her case against the non-diverse defendant and deliberately postponing acceptance of a settlement offered on Tully's behalf, Plaintiff "acted in bad faith in order to prevent . . . defendant from removing the action." 28 U.S.C. § 1446(c)(1).

## IV. CONCLUSION

For these reasons, the Motion to Remand is **DENIED**. (ECF No. 4.)

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: July 31, 2017

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE