IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

REBECCA MASSEY,

        Plaintiff,

v.                              CIVIL ACTION NO. 2:17-cv-01922

21st CENTURY CENTENNIAL INSURANCE COMPANY,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are the parties' cross motions for summary judgment. (ECF No. 15; ECF No. 22.) For the reasons discussed more fully below, the Court **GRANTS** Defendant's motion for summary judgment. (ECF No. 15.) The Court further **DENIES** Plaintiff's motion for summary judgment. (ECF No. 22.)

*I. BACKGROUND*

This action arises from an insurance coverage dispute between Plaintiff Rebecca Massey ("Massey") and her insurer, Defendant 21st Century Centennial Insurance Company ("21st Century"), stemming from an automobile accident between Massey and another motorist in which Massey was injured. (ECF No. 23 at ¶ 2.)

During the relevant time period, Massey was the named insured on an Auto Insurance Policy issued by 21st Century that provided coverage for Massey's 2005 Ford Ranger pick-up truck. (*Id.* at ¶ 5.) Massey first entered into this insurance policy by telephone on November 5,

1

2013. (*Id.* at ¶ 9.) The policy provided $25,000 per person and $50,000 per accident in bodily injury coverage and $25,000 in property damage coverage. (ECF No. 16 at 4.) On the same day, 21st Century faxed Massey her insurance ID cards and informed her that coverage would become effective at midnight on November 6, 2013, but that 21st Century would send Massey paperwork that needed to be signed, dated, and mailed back in order for Massey to maintain her coverage. (*Id.*)

The following day, 21st Century mailed Massey a "New Customer Policy Packet" that included a cover letter notifying Massey of its content and directing Massey to "refer to the next page for information about forms that may need to be completed and returned." (*Id.* at 5.) The next page of the packet was blank, but the following page included a "Policy Processing Checklist" that stated, "to continue with your coverage as requested and complete the application process, please return all signed yellow forms in the enclosed postage-paid envelope in the next 10 days." (ECF No. 15-4 at 9.) The "State Selection Forms" section of the checklist page stated, "in order to maintain your coverage as listed on your Policy Declaration page, you must confirm your original selections by signing all the forms listed below." (ECF No. 16 at 5.) The checklist page was followed by an "Important Notice" that stated in capital letters, "IF YOU DO NOT RETURN THIS FORM TO YOUR INSURER WITHIN THIRTY (30) DAYS IT MEANS YOU HAVE DECIDED NOT TO BUY OPTIONAL UNDERINSURED MOTORIST ["UIM"] COVERAGE THAT IS REQUIRED BY LAW." (*Id.*) Following this notice was the UIM coverage offer form. (*Id.*)

Massey signed and returned the application, but did not sign the UIM coverage election page. (*Id.* at 6.) Pursuant to the application instructions, 21st Century interpreted Massey's failure to sign the UIM coverage form as a decision not to purchase UIM coverage. (*Id.*)

On July 16, 2014, Christopher Tully's ("Tully") automobile collided with Massey's pick-up truck near Racine, West Virginia. (ECF No. 23 at ¶ 2.) Massey was injured as a result of the crash. (*Id.*) Tully was insured by Peak Property and Casualty Insurance Corporation ("Peak Property"). (*Id.* at ¶ 4.) Peak Property tendered to Massey $20,000 for her bodily injury and $10,000 for her property damage, which was the maximum coverage limit for bodily injury and property damage under Tully's insurance policy. (*Id.*) However, this did not completely cover Massey's damages. (*See* ECF No. 1-1 at 2 (Compl.); ECF No. 16 at 6.) Accordingly, Tully was an "underinsured" motorist. (ECF No. 16 at 6.)

On August 6, 2014, Massey notified 21st Century by letter of a potential UIM claim for her remaining medical expenses. (*See* ECF No. 1-1 at 5.) In response, 21st Century sent Massey's counsel a seven-page fax that contained the policy declaration page, coverage selection forms, and auto pay document. (*Id.*) On August 15, 2014, Massey forwarded to 21st Century Peak Property's property damage offer and requested that 21st Century consent to the underlying property damage liability limits settlement and waive its subrogation rights. (*Id.* at 6.) 21st Century responded stating that Massey's insurance policy did not provide for UIM coverage and that it was therefore unable to waive subrogation or consent to the settlement. (*Id.*)

On May 21, 2015, Massey filed this action against 21st Century in the Circuit Court of Boone County, West Virginia, requesting declaratory relief to establish UIM coverage under her insurance policy as well as claiming breach of contract and breach of implied covenant of good

faith and fair dealing. (*See* ECF No. 1-1.) On October 18, 2016, the parties settled, in full, all of Massey's property damage claims stemming from the accident, and Massey signed a release dismissing with prejudice any claims related to the property damage.[1] (*See* ECF No. 15-5 (Order of Partial Dismissal); ECF No. 15-6 (Partial Settlement Agreement and Release).)

21st Century removed this action to this Court on March 17, 2017. (ECF No. 1.) Massey subsequently filed a motion to remand which was denied. (ECF No. 4; ECF No. 13.) The parties agreed to bifurcate this action into two stages, resolving the contract claim first. (*See* ECF No. 6.) 21st Century filed the present motion for summary judgment on August 31, 2017. (ECF No. 15.) Massey filed a timely response, (ECF No. 20), and 21st Century filed a timely reply. (ECF No. 21.) Massey subsequently filed a motion for summary judgment on October 6, 2017, (ECF No. 22), to which 21st Century timely responded, (ECF No. 24), and Massey timely replied. (ECF No. 27.) As such, both motions are fully briefed and ripe for adjudication.

## II. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. That rule provides, in relevant part, that summary judgment should be granted if "there is no genuine issue as to any material fact." Summary judgment is inappropriate, however, if there exist factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). When construing such factual issues, the Court must

---

[1] This Order of Partial Dismissal also included a dismissal of Massey's claims against Tully following Massey's acceptance of Tully's offer of liability limits pursuant to his policy with Peak Property. (See ECF No. 15-5.)

view the evidence "in the light most favorable to the [party opposing summary judgment]." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). Once the moving party has met its burden, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If a party fails to make a sufficient showing on one element of that party's case, the failure of proof "necessarily renders all other facts immaterial." *Id.* at 323.

"[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256. "The mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to withstand summary judgment; the judge must ask whether "the jury could reasonably find for the plaintiff." *Id.* at 252.

### III.    DISCUSSION

Cross-motions for summary judgment are reviewed separately if material facts are in dispute. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003). Furthermore, under West Virginia law, "determination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law." *Norfolk S. Ry. Co. v. Nat'l Union Fire Ins. of Pittsburgh*, 999 F. Supp. 2d 906, 910 (S.D. W. Va. 2014) (citing *Marlin v. Wetzel Cty. Bd. of Educ.*, 569 S.E.2d 462, 464 (W. Va. 2002)). Here, the facts underlying Massey's claims are undisputed—the parties

merely dispute the legal significance of those facts as it pertains to Massey's insurance coverage. For brevity's sake, the parties' various arguments are woven together in a single discussion.

In her Complaint and in her motion for summary judgment, Massey argues that 21st Century did not make a commercially reasonable offer of UIM insurance as required by West Virginia law and, therefore, UIM coverage should be read into Massey's insurance policy as a matter of law. (ECF No. 1-1 at 7.) Specifically, Massey alleges that there were deficiencies in the service and contents of 21st Century's UIM coverage form. (*See id.* at 4–7.) Massey further argues in her motion for summary judgment that she did not make a knowing or intelligent rejection of the UIM coverage because she did not orally or in writing express a desire to select or reject the coverage.[2] (*See id.* at 15.)

In its motion for summary judgment, 21st Century argues that it made a commercially reasonable offer of UIM coverage to Massey, which Massey chose not to purchase. (*See* ECF No. 16 at 1.) Specifically, 21st Century contends that it is entitled to the statutory presumption provided in West Virginia Code § 33-6-31d that, having made an effective offer of UIM coverage to Massey, Massey's failure to sign the coverage form establishes that she knowingly and intelligently rejected the UIM coverage. (*See* ECF No. 16 at 8–12.)

West Virginia Code § 33-6-31(b) provides in relevant part the following:

> [A policy or contract] of bodily injury liability insurance, or of property damage liability insurance, covering liability arising from the ownership, maintenance or use of any motor vehicle, may be issued or delivered in this state . . . shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he or she is legally entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle up to an amount not less

---

[2] In her Complaint, Massey also contends that 21st Century's offer of UIM coverage was defective because it failed to offer UIM coverage in the same amount as the property damage as required by statute. (*See* ECF No. 1-1 at 6.) However, Massey abandons this argument in her motion for summary judgment and in her response to 21st Century's motion. As such, the Court will not address this argument.

than limits of bodily injury liability insurance and property damage liability insurance purchased by the insured without set off against the insured's policy or any other policy.

W. Va. Code § 33-6-31(b). The Supreme Court of Appeals of West Virginia has held "[w]hen an insurer is required by statute to offer optional coverage, it is included in the policy by operation of law when the insurer fails to prove an effective offer and a knowing and intelligent rejection by the insured." *Thomas v. McDermitt*, 751 S.E.2d 264, 269 (W. Va. 2013) (quoting *Bias v. Nationwide Mut. Ins. Co.*, 365 S.E.2d 789, 791 (W. Va. 1987)).

In order for an offer to be effective, it must be "commercially reasonable . . . so as to provide the insured with adequate information to make an intelligent decision." *Id.* at 269 (quoting *Bias*, 365 S.E.2d at 791). The insurance carrier bears the burden of proving that an offer was commercially reasonable. *See Kalwar v. Liberty Mut. Ins.*, 506 S.E.2d 39, 43 (W. Va. 1998). With regard to when an offer is commercially reasonable, § 33-6-31d further provides the following:

> Optional limits of uninsured motor vehicle coverage and underinsured motor vehicle coverage required by section thirty-one of this article shall be made available to the named insured at the time of initial application for liability coverage and upon any request of the named insured on a form prepared and made available by the insurance commissioner. The contents of the form shall be as prescribed by the commissioner and shall specifically inform the named insured of the coverage offered and the rate calculation therefor, including, but not limited to, all levels and amounts of such coverage available and the number of vehicles which will be subject to the coverage. The form shall be made available for use on or before the effective date of this section. The form shall allow any named insured to waive any and all of the coverage offered.

§ 33-6-31d(a). In accordance with § 33-6-31d(a), the West Virginia Insurance Commissioner ("the Commissioner") issued Information Letter No. 121 ("Letter 121"), which detailed the procedure and contents of the form that an offeror of UIM coverage must use. (*See* ECF No. 19-

7

4 at 2–3.) Letter 121 states that "at a minimum the form must: 1. Inform a named insured of the optional coverages offered; 2. Inform the named insured of the rate calculation for the optional coverages including amount of coverage and the number of vehicles; and 3. Give the named insured the option to reject the optional coverage." (*Id.* at 2–3.) It further provides that this form must be provided to the insured by hand delivery or "[b]y mail with the first premium notice to a named insured. . . ." (*Id.* at 3.) Attached to Letter 121 are sample forms. (*See id.* at 6–9.)

Once an effective offer is made and the form is properly delivered to the insured, § 33-6-31d(c)–(d) provides the following:

> [The] named insured shall complete, date and sign the form and return the form to the insurer within thirty days after receipt thereof. . . . Failure of the applicant or a named insured to return the form described in this section to the insurer as required by this section within the time periods specified in this section creates a presumption that such person received an effective offer of the optional coverages described in this section and that such person exercised a knowing and intelligent rejection of such offer. Such rejection is binding on all persons insured under the policy.

§ 33-6-31d(c)–(d). (*See also* ECF No. 19-4 at 4 ("Statutory compliance in the reproduction of the forms contained herein necessary to create a presumption of an effective offer of optional coverages and a knowing and intelligent election or rejection is achieved so long as the reproduced forms provide ALL the information set forth within the Insurance Commissioner promulgated forms.").)

Here, it is undisputed that, on November 5, 2013, Massey applied and paid for insurance from 21st Century over the telephone and that Massey's coverage began at midnight on November 6, 2013. (*See* ECF No. 16 at 4; ECF No. 23 at 10–11.) Further, Massey does not dispute that, on November 6, 2013, 21st Century mailed Massey a "New Customer Packet" containing the UIM

8

coverage election form that Massey was required to sign and return within thirty days.³ (*See* ECF No. 15-4 ("New Customer Packet").) This form was virtually identical to the sample form provided by the Commissioner in Letter 121. (*See* ECF No. 15-2 at 19; ECF No. 19-4 at 7.) Thus, 21st Century complied with § 33-6-31d(c)–(d). *Bailey v. Geico Gen. Ins. Co.*, No. 2:05-0806, 2010 WL 2643380, at *6–7 (S.D. W. Va. June 29, 2010) (holding that the mailing of a coverage form in an initial premium notice packet shortly after the initial telephone application complied with the statute and invoked the presumption). Lastly, it is undisputed that Massey did not sign the UIM coverage form.⁴ (*See* ECF No. 15-4 at 19 ("Uninsured Motorist Coverage Offer").)

21st Century argues that the above undisputed facts carry its burden of showing that it is entitled to the statutory presumption that Massey received an effective offer of UIM coverage and exercised an intelligent rejection of that coverage. *See Bailey*, 2010 WL 2643380, at *7 ("If the [o]ffer [f]orm sent to the applicant is materially identical to the Commissioner's form, and if the applicant fails to return the form, the presumption adopted in [§] 33-6-31d(d) may be invoked.") (citing *Ingles v. State Farm Mut. Auto. Ins. Co.*, F. Supp. 2d 655, 659 (S.D. W. Va. 2003)). (*See also* ECF No. 16 at 8–12.)

Massey does not dispute the above facts but argues that 21st Century is not entitled to the statutory presumption because its offer of UIM insurance was not commercially reasonable. Massey offers several, thin arguments in support of her contention. First, Massey asserts that 21st

---

³ Massey characterizes the fact that the "New Customer Packet" was sent to her on November 6, 2013, as an assertion made by 21st Century. (*See* ECF No. 20 at ¶ 13.) However, 21st Century provided a copy of the packet signed and dated by Massey. (*See* ECF No. 15-4.) Furthermore, Massey does not dispute receiving this packet anywhere in the briefing.
⁴ In her motion, Massey states, "[21st] Century has not produced, nor can it produce, UIM selection/rejection forms which have been signed, either in writing or electronically, by [Massey] indicating she knowingly and intelligently rejected the paid coverage." (ECF No. 23 at ¶ 15.)

9

Century's offer was not commercially reasonable because it was not presented to Massey at the time of her telephone application or initial payment. (*See* ECF No. 23 at 10–11.) Massey argues that this failure to present the UIM coverage offer at the time of the telephone call, during which she applied and paid for insurance, does not comply with the requirements of a commercially reasonable offer as defined in Letter 121. (*Id.* at 11.) However, this argument is untenable and, frankly, ridiculous. As stated above, Letter 121 states that the UIM coverage offer must be hand-delivered to the named insured or "mail[ed] with the first premium notice to a named insured." (*See* ECF No. 19-4 at 3.) It would be impossible for any insurer to comply with either of these methods during an application by telephone. Furthermore, as stated above, this District has held that mailing the UIM coverage form shortly after the initial insurance application is commercially reasonable. *See Bailey*, 2010 WL 2643380, at *6–7. Accordingly, the Court rejects Massey's first argument.

Massey argues second that 21st Century's UIM coverage form was not commercially reasonable because the rates quoted on the form were based on 21st Century's "Go Green" discount, a program that Massey chose not to enroll in. (*See* ECF No. 23 at 10–11.) This discount lowered the rate calculation by 3% or approximately $10.00. (*See* ECF No. 21 at 5.) Thus, Massey argues, the rates quoted did not accurately reflect the coverage rate. (*See* ECF No. 23 at 10–11.) Massey asserts that the inaccurate rate quote did not satisfy § 33-6-31d(a), which requires insurers to inform the insured of the UIM coverage offered and the rate calculation of that coverage. (*Id.* at 11.) Massey does not offer any case law that states that a minor difference in price voids the commercial reasonableness of a coverage offer. Furthermore, this rate calculation would have been accurate if Massey had elected to participate in the "Go Green" program.

10

Therefore, this Court does not find Massey's second argument persuasive. *See, e.g.*, *Martin v. State Farm Mut. Auto. Ins. Co.*, 809 F. Supp. 2d 496, 508 (S.D. W. Va. 2011) (finding that the failure of the defendant to state whether the quoted rate reflected a discount, but instead providing two columns listing alternative premiums depending on whether the discount applied, was insufficient to conclude that the offer of coverage was deficient).

Massey third attempts to assert several arguments regarding the paperwork provided in the "New Customer Packet" to show that she did not waive UIM coverage. (*See* ECF No. 23 at 14–15.) First, she asserts that the coverage page to the package states that "the following page," contains information about the "Coverage Selection Forms", but that "the following page" is blank. (*See id.* at 14.) Massey next asserts that the packet states that the insured must complete and return signed all yellow forms enclosed in the packet, but that no yellow forms were produced by 21st Century. (*See id.* at 14–15.) The Court does not find any of these arguments persuasive nor is there any authority that justifies Massey's arguments for finding that the above "deficiencies" show, or even go toward a finding that, there has not been a knowing or intelligent waiver. Furthermore, the packet was included in discovery as a black and white copy of the original packet, thus precluding the yellow forms from showing up yellow. (*See* ECF No. 19-4; ECF No. 24 at 10.)

Lastly, Massey argues that she did not verbally reject the UIM coverage offer over the telephone or sign a form rejecting the coverage. (*See id.*) However, the statute does not require that the insured verbally reject or select the UIM coverage, nor does the form provided by 21st Century state that the insured must sign a form stating that he or she rejects the coverage offer. The form required Massey to sign the provided forms that are listed on the "Policy Processing

11

Checklist" should she **select** the coverage being provided on that particular form. (*See* ECF No. 19-4 at 11.) Thus, Massey would have only signed the UIM coverage form if she was selecting that coverage, not if she was rejecting it. *See Loughran v. Prop. & Cas. Ins. Co.*, No. 3:12-CV-1, 2012 WL 12874921, at *5 (N.D. W. Va. July 10, 2012) ("[I]n the case of an insured who fails to return the form at all, there is little more that the insurance company can prove other than it sent the forms to the insured and the insured failed to return them as required by W. Va. Code § 33–6–31d.") (denying insured's motion for summary judgment).

Accordingly, the Court **FINDS** that 21st Century's offer of UIM coverage was commercially reasonable and thus effective, entitling 21st Century to the statutory presumption that failure to sign, date, and return the form constitutes a knowing and intelligent waiver of the coverage. *See* W. Va. Code § 33-6-31d(d) ("[Failure to return the form] creates a presumption that such person received an effective offer of the optional coverages . . . and . . . exercised a knowing and intelligent rejection of such offer."). Pursuant to this presumption, the Court **FINDS** that Massey knowingly and intelligently waived UIM coverage in her insurance application and is therefore not entitled to have the UIM coverage read into her insurance policy as a matter of law. The Court therefore **GRANTS** 21st Century's motion for summary judgment and **DENIES** Massey's motion for summary judgment.

## IV. CONCLUSON

Accordingly, the Court **GRANTS** 21st Century's motion for summary judgment, (ECF No. 15), and **DENIES** Massey's motion for summary judgment. (ECF No. 22.) The Court further **DISMISSES** the Complaint, in its entirety, **WITH PREJUDICE** and **DIRECTS** the Clerk to

remove this action from the Court's docket. A separate Judgement Order will be entered reflecting the Court's ruling.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

\

                              ENTER:     February 22, 2018

_____
THOMAS E. JOHNSTON, CHIEF JUDGE